IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HELEN THOMAS FISH, et al. *

Plaintiffs, *

v. * CIVIL NO.: GLR-16-496

AIR & LIQUID SYSTEMS CORPORATION, et al. *

Defendants. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

**Introduction**

This action brought by the estate of Robert Fish, his wife and children, alleges certain Defendants who were "miners, manufacturers, processors, importers, converters, compounders, merchants, installers, removers, sellers, distributors, marketers and/or suppliers of asbestos; asbestos-containing products; or products designed to be used with asbestos-containing products or with products which Defendants knew or should have known would contain asbestos" caused asbestos exposure to Plaintiff resulting in Plaintiff's death due to mesothelioma (ECF 396-3). Among those Defendants, it is alleged that Plaintiff was exposed to asbestos while working on brake systems on Ford vehicles. Of the voluminous number of Defendants and resulting Cross-Defendants, only Ford, along with four others remain. Of the four, three have dispositive motions pending and one has a motion to dismiss pending. The majority of Defendants have been settled or dismissed. This case was referred to me by Judge Russell for purposes of managing discovery and resolution of any discovery disputes. ECF 406.

Plaintiffs and Ford were before the Court on January 13, 2017 for a hearing on Plaintiffs' Motion to Compel discovery (ECF 400, 420). The Court made rulings on the record at that time. The briefing was not yet complete for ECF 423, Defendant Ford's motion for a protective order now before the Court. The briefing is now complete and the motion is ready for ruling. No hearing is necessary. Local Rule 105.6. Plaintiffs have filed a motion for leave to file a Sur-Reply (ECF 474). The motion to file a sur-reply is Denied. Local Rule 105.2(a).

Ford has moved for a protective order to limit the 54 areas of inquiry (AOI) with respect to their designated Rule 30(b)(6) witness. In essence, Ford argues that the requested AOI by Plaintiffs are not proportional to the allegations at issue, are overly broad and unduly burdensome. The arguments presented in ECF 423 are similar in nature to those presented at the hearing on January 13, 2017. Plaintiffs argue that their AOI should not be so limited, and rely upon an affidavit of Eldon Dierks, (a friend of Robert Fish) that Plaintiffs argue "supplements" the three affidavits and detailed deposition previously provided by Robert Fish (ECF 455-3). In his affidavit, Mr. Dierks stated that he and Plaintiff worked on many automobiles together during their three years at the hobby shop at Fort Meade including other Fords. Those included more than one Ford model and more than one model year of vehicles that either Dierks or Mr. Fish worked on or were being worked on while they were present. Mr. Fish previously testified he recalled only working on one Ford- a 1974 Ford Mustang II, and he was just helping someone with a brake job at that time. Mr. Fish testified he worked on many other vehicles from other manufacturers. He did not recall using original Ford parts. He testified that other persons worked on vehicles in the hobby shop when he was present.

Federal Rule 26(b) provides general provisions regarding the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

> importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) .

Discovery rules are to be accorded broad and liberal construction. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Nevertheless, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ...." Fed. R. Civ. P. 26(c)(1). Protective orders pursuant to Rule 26(c) "should be sparingly used and cautiously granted." *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) (citation omitted).

The party moving for a protective order bears the burden of establishing good cause. *Webb v. Green Tree Servicing, LLC,* 283 F.R.D. 276, 278 (D.Md. 2012). The proponent may not rely on stereotyped or conclusory statements… but must present a particular and specific demonstration of fact as to why a protective order should issue. *Id.* Good cause exists where the information sought in discovery is not relevant to any issue in the case.

As stated previously, Plaintiffs have submitted the affidavit of Eldon Dierks, which they claim "supplements" the previous affidavits and deposition testimony of Plaintiff himself. One lawyer's supplement is another lawyer's contradiction. Defendant Ford argues that the Dierks affidavit contradicts the original Plaintiff's own sworn testimony. In reviewing the three affidavits filed by Plaintiff and the deposition testimony, it is clear that the Dierks affidavit

contains allegations of additional Ford vehicles and suggests a greater level of potential exposure than the original Plaintiff himself testified to while under oath.

**Discussion**

Maryland cases have often recognized a plaintiff's burden to prove a *prima facie* cause of action and damages. *See, e.g., Wood v. Abell,* 268 Md. 214, 233, 300 A.2d 665 (1973) (holding that plaintiffs have the burden to prove negligence and damages); *Jones v. Federal Paper Bd. Co., Inc.,* 252 Md. 475, 485, 250 A.2d 653 (1969) (holding in a negligence action that "plaintiffs had the burden of proving their damages beyond mere conjecture and speculation...."); *Brock Bridge Ltd. Partnership, Inc. v. Development Facilitators, Inc.,* 114 Md.App. 144, 157, 689 A.2d 622 (1997) (holding in an action for breach of contract that "the plaintiff bears the burden of adducing sufficient evidence from which the amount of damages can be determined....").

The Court is guided by Fed. R. Civ. P. 26(b)(1) and Appendix A, Guideline 1 of the Local Rules, "to facilitate the just, speedy and inexpensive conduct of discovery, in light of what is relevant to any party's claim or defense; proportional to what is at issue in a case and not excessively burdensome or expensive compared to the likely benefit of obtaining the discovery being sought." Local Rules, Appendix A, Guideline 1.

Central to resolving any discovery dispute is determining whether the information sought is within the permissible scope of discovery, as stated in Fed.R.Civ.P. 26(b)(1). *Lynn v. Monarch Recovery Management, Inc.,* 285 F.R.D. 350, 355 (D.Md. 2012). Federal Rule of Civil Procedure 26(b)(2)(C) "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D.Md.2010). Under that rule, the court, acting *sua sponte* or at a party's request, "must limit the

frequency or extent of discovery" if: (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C)(i)–(iii).

The Court's comments regarding the facts of the case at the hearing on January 13, 2017.were as follows:

> "So just some comments. This case alleges an asbestos injury to the plaintiff from multiple sources over the plaintiff's adult lifetime. Plaintiff is now deceased and his claim is represented by his wife, as executrix of the estate. The plaintiff worked in the shipbuilding industry from 1960 to 1961. During that time, he worked on pipes and pipefitting where he claimed he could visibly see dust around him. And it is alleged that, or at least the theory of recovery here is that, that dust contained asbestos fibers.
>
> The plaintiff also served in the Navy for 20 years and alleges additional exposure to asbestos while working and serving on ships over his 20-year period.
>
> Now more pertinent to today's case, it is also alleged that plaintiff performed work inside or as a hobby on various automobiles, including Buicks, Oldsmobile, Chevrolet, Pontiac -- those are all GM products -- Dodge, Plymouth, and Chrysler products, Toyota, Datsun, and others from about 1960 to 1980. And the plaintiff alleges that the brakes in these vehicles contain an asbestos component. And when replacing the brakes, part of the mechanic's duty was to clean the area where the brakes would be replaced, and that compressed air was used, which filled the workspace with asbestos fibers causing another source of possible ingestion.
>
> As to Ford, the plaintiff testified in his deposition that the only Ford he recalled working on was a 1974 Mustang II, where around 1979 in one afternoon he helped a friend do a brake job for about three hours. The plaintiff, I believe, takes the position that others worked on these automobiles, including Fords, in the hobby shop, and plaintiff could have been exposed to asbestos dust.
>
> Other than that argument, I found no evidence in the record that plaintiff worked on any other Ford vehicles. Plaintiff also testified that he never purchased Ford-branded parts. He did not identify a single make or model Ford worked on by his fellow servicemen at the hobby shop. Initially there was some 50-plus defendants named. But as discovery has proceeded, the number

of defendants has continually decreased, as it appears from the record that plaintiff's principle exposure allegations are not from Ford brakes or products but from other defendants where he alleges he was consistently exposed on a more long-term basis." Transcript at pp. 5-7.

In support of the Court's comments, the following are excerpts from the affidavits of Mr. Fish and his deposition:

**Affidavit at p. 10-22:**

"While all types of makes and model of cars (including but not limited to Ford, Mercury, Buick, Oldsmobile, Chevrolet, Chrysler, Pontiac, Plymouth, Dodge, Datsun, Toyota and Honda) were being worked on in the Hobby Shop, among the most popular brands were Ford, Chevrolet, Chrysler and Datsun.

**Affidavit at p.11-27:**

"Once the brake drum was removed, the brake dust inside the drum was dumped onto the ground. This caused a cloud of visible dust to rise in the workplace. Compressed air was then sprayed on the brake assembly to clean and remove the brake dust from the assembly. Spraying the brake assembly with compressed air created a cloud of visible dust."

**Statement at 4:**

"While many different brands of vehicles were worked on in the Hobby Shop, the most popular brands were Ford, GM, Chrysler and Datsun. Similarly, while all different types of work were being performed in the Hobby Shop, brake work (inspection/adjustment/repair and/or replacement) was one of the most common. My best recollection is that approximately half of the vehicles being worked on would have their brakes inspected, adjusted and/or replaced while in the shop."

**Deposition at 349-350:**

Q: "Had you ever worked on a Ford Motor vehicle other than the time that you told us about Mr. Perrault; did I say his name correctly?"

A: "Yes. That was the only one."

Q: "That's the only Ford motor vehicle that you ever worked on?"

A: "Yes, sir."

**<u>Previous Exposure</u>**

**Affidavit at 6-8:**

Plaintiff alleged exposure to asbestos aboard the NS Savannah and the USS Kitty Hawk among other vessels. He initially worked in HVAC. He also worked in close proximity to pipe insulators and panel installers. Mr. Fish contradicts his counsel's assertions at the hearing and in the pleadings, that his work was isolated to the radio room, suggesting a minimal exposure. Mr. Fish specifically stated he was around various pieces of machinery in the boiler and engine rooms while they were being insulated. He also stated that he was exposed while pipe fitters and insulators were installing and insulating various equipment. "This created visible airborne dust in my immediate vicinity."

**Affidavit at 9:**

"I enlisted in the United States Navy in January 1962 and served for nearly 20 years. During my service, I worked aboard the following vessels at times between 1974 and 1976:
USS Richard B. Anderson (approx.. 10 days)
USS Sea Dragon (approx.. 2 months)
USS Kitty Hawk (approx.. 10 days)
USS Constellation (approx.. 2 ½ months)
USS Brunswick (approx.. 3 weeks)
USS Jones (approx.. 10 days)
USS Permit (approx. 2 months)
***My work duties primarily placed me in the radio rooms aboard these vessels. I also lived and slept on each of the vessels during my time aboard them and was, at times, in spaces where thermal insulation products were located. At times there was dust in the areas that I breathed. I believe this dust contained at least some amount of asbestos***." (emphasis added).

It is clear from the original Plaintiff himself, and I incorporate his testimony, that the Court's characterization of Plaintiffs' theory of exposure and recovery is supported directly by the statements of the original Plaintiff . At the hearing, Plaintiffs' counsel, while now pursuing Ford, minimized the extensive occupationally related exposure that Plaintiff alleged in his complaint, affidavits and depositions, and now attempts to argue that Ford, (not all of the prior occupational exposure), was a major or arguably *the major* contributing factor in Plaintiff's mesothelioma.

In evaluating the issue of whether to grant the protective order, the Court looks to the Plaintiffs' theory of liability and how Defendant Ford fits into that theory. Plaintiffs have alleged

an occupational exposure to asbestos in several areas of Mr. Fish's life. Mr. Fish was not an automobile mechanic and did not work on Ford vehicles for a living. Plaintiffs have alleged that Mr. Ford was exposed to asbestos while he worked and lived aboard the NS Savannah and then the USS Kittyhawk from 1960-1961, along with other vessels during his Navy career. During that time he claimed he was around insulation and pipe fitting activities, the engine room, boiler rooms, pipe insulation among other activities and all of these created "dust" where he alleged ingestion of asbestos. He also claimed that in his 20 years in the Navy, he lived and slept on vessels where he was exposed to asbestos. (ECF 474-1). Mr. Fish alleged that his non-occupational exposure was at the Hobby Shop as previously discussed.

The testimony from the original Plaintiff himself calls into question Ford's part in contributing to his asbestos exposure. Mr. Fish could only recall the one 1974 Ford Mustang II, and in a very broad sense, the possibility that he could have been present when other Ford vehicles were worked on, whether or not that included work on the brakes. The speculative nature of Ford's contribution to Plaintiff's exposure requires the Court to limit discovery by applying the requirements of Rule 26 and the Local Rules discussed previously. In his affidavits and deposition, Plaintiff could not describe any other Ford vehicles as sources of exposure except to say that he may have been present when other persons worked on Fords as well as just about every other make and model vehicle in existence at the time of the alleged injury.

This speculative nature of his claim begs the question of how all of the requested information sought by Plaintiffs could ever assist them in meeting their burden of proof when their best witness could not. Put another way, even if Ford supplied the information regarding all of the vehicles by make and model that were in existence between 1950-1979 that contained asbestos in the brake components, there is no method of proving that (1) any or all of those

vehicles were ever in the Hobby Shop (2) in the Hobby Shop when Plaintiff was present (3) had brake work done that exposed Plaintiff (as opposed to all the other makes and model vehicles being worked on and the many non-brake repairs) and (4) that the exposure was sufficient a level to cause an asbestos injury. The Court recognizes that if Mr. Fish had been a Ford mechanic and his occupational exposure been more well defined, this case would be in a different posture. That is. however, not what we have before the Court.

Even the Dierks Affidavit, at its best, does little to fill in the gaps and support Plaintiffs' speculative theory of recovery. To prove that a given injury was "caused by exposure to a specified substance," a plaintiff must demonstrate "the levels of exposure that are hazardous to human beings generally," and "the plaintiff's actual level of exposure." *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 263 (4th Cir.1999). *Yates v. Ford Motor Co.,* 113 F.Supp. 841, 850 (E.D.N.C. 2015).

Recently, the District Court in the Eastern District of North Carolina discussed a theory of recovery based upon speculation with respect to expert testimony:

"The theory that "each and every exposure to asbestos products results in injury to the person so exposed" has made repeat appearances in the realm of asbestos litigation. *Krik v. Crane Co.,* 76 F.Supp.3d 747, 749–50 (N.D.Ill.2014); *see* William L. Anderson, "The 'Any Exposure' Theory Round II—Court Review of Minimal Exposure Expert Testimony in Asbestos and Toxic Tort Litigation Since 2008," 22 Kan. J.L. & Pub. Pol'y 1 (2012). Also referred to as "any exposure" theory, or "single fiber" theory, it represents the viewpoint that, because science has failed to establish that any specific dosage of asbestos causes injury, every exposure to asbestos should be considered a cause of injury. *See Krik,* 76 F.Supp.3d at 749–50; *Anderson v. Ford Motor Co.,* 950 F.Supp.2d 1217, 1225 (D.Utah 2013). Numerous courts have excluded expert testimony or evidence grounded in this theory, reasoning that it lacks sufficient support in facts and data. *E.g., Comardelle v. Pa. Gen. Ins. Co.,* 76 F.Supp.3d 628, 632–33 (E.D.La.2015); *Krik,* 76 F.Supp.3d at 752–53, *Anderson,* 950 F.Supp.2d at 1225; *Sclafani v. Air & Liquid Sys. Corp.,* No. 2:12–CV–3013, 2013 WL 2477077, at *5 (C.D.Cal. May 9, 2013); *Henricksen v. ConocoPhillips Co.,* 605 F.Supp.2d 1142, 1166 (E.D.Wash.2009). Likewise, applying the *Daubert* factors, courts have found that the theory cannot be tested, has not been published in peer-reviewed works, and has no known error rate. *Krik,* 76 F.Supp.3d at 753–54; *Anderson,* 950 F.Supp.2d at 1224–25; *Sclafani,* 2013 WL 2477077, at *5; *see Wills v. Amerada Hess Corp.,* 379 F.3d 32, 49 (2d

Cir.2004) (affirming exclusion of theory that decedent's cancer was caused by a single exposure to toxic chemicals, regardless of dosage, based on *Daubert* factors).
*Yates v. Ford Motor Co.,* 113 F.Supp. 841, 846 (E.D.N.C. 2015).

In the instant case, Plaintiffs' allegations of ingestion with respect to Ford, even in considering the Dierks affidavit, falls short of convincing this Court to fully deny the motion for protective order as Plaintiffs request. It is also not lost on this Court that the Dierks affidavit, while admittedly providing supplemental information, does in fact contradict the original Plaintiff's testimony and statements in several ways. The contradiction of facts is simply a factor for the Court to consider when determining whether "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C)(iii).

**Defendant Ford's Motion for a Protective Order**

**The Areas of Inquiry**

1. The names, addresses, job titles, length of time employed/retained by Defendant, and a year-by-year list of all other positions, titles, or jobs held when working for Defendant of each person who has supplied any information used in answering Plaintiffs' discovery requests, and the identity of all documents concerning same.

**Area of Inquiry No. 1** seeks irrelevant information, including because it seeks discovery on discovery, and information protected from discovery by the attorney-client privilege and the work product doctrine. Furthermore, the information sought (but not objected to) is duplicative of what Plaintiffs already have requested and obtained through other methods of discovery (see Exhibit F at No. 1 and Exhibit D at No. 1).6 Consequently, Plaintiffs' attempt to seek the same information via deposition of its corporate representative is unreasonably cumulative or duplicative as Plaintiffs had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall*, 2005 U.S. Dist. LEXIS 34940 *22;
5 Plaintiffs' Areas of Inquiry in the Amended Notice does not include number 43. 6 Ford answered this Interrogatory by identifying Matthew Fyie and providing his background information. Ford further identified that its attorneys, including counsel of record in this case and persons working under the direction of those attorneys, assisted in answering the discovery. Beyond this, Ford stated that there were no other individuals who supplied any information used in answering the Interrogatories. Ford objected to identifying the individuals working under the direction of Ford's attorneys on the grounds that it sought irrelevant information, in particular, it sought discovery on discovery, and information protected from discovery by the attorney-client

privilege and the work product doctrine. *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4. Additionally, the manner in which Ford and its attorneys conducted discovery (e.g. who was involved and "all documents concerning same") -- "discovery on discovery" -- is not an appropriate topic of discovery and numerous courts have disallowed such discovery. *See Banks v. St. Francis Health Ctr., Inc.*, 2015 WL 7451174, at *7-8 (D. Kan. Nov. 23, 2015).

**Motion Granted for the reasons set forth on the record on January 13, 2017.**

2. For each model year between 1950 and 1979 that Ford branded motor vehicles were sold, the identity, by year, of the brake specification(s) for each of your models by model and trim line, and the identity of all documents concerning same.

3. Whether any of the models and trim lines identified in Area of Inquiry No. 2 that there were asbestos-free brake linings that would safely and effectively stop the vehicle, the identity of the non-asbestos linings (by manufacturer brand name and specific part number and corresponding brake edge code) for each model and trim line you claim could safely and effectively stop the vehicle and, when each such product was commercially/generally available in the United States, and the identity of all documents concerning same.

4. Whether there were suitable asbestos-free brake linings that would safely and effectively stop any of your vehicles between 1950 and 1979, and, if so, state by each model, trim line and year all information concerning any such contention and the identity of all documents concerning same.

5. Your specification of asbestos-containing brakes and clutches for use in Ford vehicles at any time during the years 1950 to 1979, inclusive, and the identity of all documents concerning same.

6. Your involvement in any manner in the design of asbestos-containing brakes and/or clutches for use in Ford vehicles at any time during the years 1950 to 1979, inclusive, and the identity of all documents concerning same.

7. Your communications with any of your supplier of friction products that relates in any way to the content of the friction materials used in the products supplied to you during the years 1950 to 1979, inclusive, and the identity of all documents concerning same.

8. Your choice and/or specification of any particular fiber type such as chrysotile asbestos, amosite asbestos or crocidolite asbestos, in friction products for Ford vehicles from 1950-1979 and the identity of all documents concerning same.

10. Performance specifications (and the design thereof) for your vehicles and any friction products used in your vehicles (such as but not limited to braking systems), including your involvement of any kind in such design/specification and the identity of all documents concerning same.

15. Whether you requested of any of your suppliers that they not cease their supply of asbestos-containing products to you and identify the substance of the request(s), to whom/what entities you made such requests of and when, and the identity of documents concerning same.

**Areas of Inquiry Nos. 2-8; 10; and 15** are overly broad, unduly burdensome and seek irrelevant information that is not proportional to the needs of this case. For example, these AOI seek information relating to the specifications and composition of the friction material used in the brakes and clutches of each and every Ford vehicle sold by Ford over a 29 year time period. This information would include over approximately 100 different makes and models of vehicles. Similarly, Plaintiffs seek information regarding suppliers over the same expansive time period, not limited to a make or model vehicle, and not identifying any particular component. Such research is extremely time-consuming, labor-intensive and costly, and is therefore unduly burdensome given the facts of this case. The declaration of Matthew Fyie, provided in support of Ford's Opposition to Plaintiffs' Motion to Compel, and resubmitted herein, describes this massive burden. Exhibit K, Declaration of Matthew Fyie, dated November 3, 2016. Moreover, the record confirms that Mr. Fish's allegations of exposure to Ford products is limited to a brake job on a 1974 Mustang; Mr. Fish did not identify any other specific makes, models or years of Ford vehicles at issue. Accordingly, Ford's objections to these AOI are well taken and should be sustained.

Case law supports Ford's position that a protective order is warranted. In *Young v. UPS of Am., Inc.,* 2010 U.S. Dist. LEXIS 30764 (D. Md. March 30, 2010), plaintiff noticed a deposition with fifty-one (51) different subject matters on which she sought to require defendant to designative a corporate representative to testify. Id. *24-25. Defendant requested a protective order on the basis that the notice was overly broad, unduly burdensome, sought irrelevant information and lacked the reasonable particularity required by the Rules. Id. The Court stated "[t]he subjects into which plaintiff may inquire in the 30(b)(6) deposition must not be overbroad and must be limited to a relevant time period, geographic scope, and related to claims for which plaintiff has exhausted her administrative remedies." Id. The Court determined that Plaintiff's deposition notice failed to comply with these requirements and therefore granted a protective order. Id. The Court prohibited Plaintiff from inquiring about those requests that were overbroad or vague, not related to Plaintiff's claims, and were outside the scope of a relevant time period. Id. Similarly, this Court should limit Plaintiffs' discovery requests to the 1974 Mustang II that Mr. Fish identified as being the Ford vehicle at issue.[1]

In addition, the information requested in these AOI and not otherwise objected to is duplicative of what Plaintiffs already requested through other methods of discovery (e.g. Section II. C.), and is currently the subject of a pending motion to compel in this matter with regard to that discovery. See ECF #400. Consequently, Plaintiffs' attempt at seeking the same information via deposition is unreasonably cumulative or duplicative as Plaintiffs had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall,* 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4.

[1] Ford made a good faith attempt to meet and confer on these AOI by requesting that Plaintiffs narrow the scope to areas that are relevant and proportional to this matter. See Exhibit J, November 18, 2016, Meet and Confer Letter. Plaintiffs have refused to narrow the scope of any of the 54 AOI.

**Motion Granted. Plaintiffs' request is overly broad and unduly burdensome. Plaintiffs' request is not proportional to the issues presented in Plaintiffs' claims.**
**Plaintiffs may submit new Areas of Inquiry limiting their inquiry to Ford vehicles they can prove Plaintiff actually replaced or repaired brakes alleged to contain asbestos during the relevant time period of 1970-1979.**

9. Your use of crocidolite-asbestos-containing phenolic reactors in your vehicles prior to 1980 and the identity of all documents concerning same.

19. All Ford Manufacturing Standards related to ZF10 "labeling" and any information concerning same, including but not limited to the identity of documents concerning same.

**Area of Inquiry Nos. 9[2] and 19[3]** are overly broad, unduly burdensome and seek information that is neither relevant nor proportional to the issues in this litigation. Plaintiffs cannot point to any testimony that alleges that Mr. Fish performed, or worked around others performing, automatic transmission or body repair on a Ford vehicle. Again, Mr. Fish's allegations of exposure to Ford products is limited as previously described, and the specific product identification is limited to a brake job on a friend's 1974 Mustang. Further, these AOI are not limited to a reasonable or relevant time period, and are not limited to a specific vehicle, product or component reasonably at issue in this case. Plaintiffs were required to, but did not, serve discovery with relevance and proportionality in mind as they failed to request information on components and materials that actually have a bearing on the facts in this case. Accordingly, Ford's objections are well taken and should be sustained. *See Young v. UPS of Am., Inc.,* 2010 U.S. Dist. LEXIS 30764. Fed. R. Civ. P. 26 (a); O'Connor, 2016 U.S. Dist. LEXIS 3738, 2016 WL 107461; *Gilead Scis., Inc*., 2016 U.S. Dist. LEXIS 5616, 2016 WL 146574, at *1.

**Motion Granted. Plaintiffs request is overly broad and unduly burdensome and lacks relevance to the issues presented by Plaintiffs' claim.**

11. All Ford product change requests ("PCR") relating to asbestos or asbestos free brakes, clutches or gaskets, including but not limited to any and all engineering product change requests regarding changes made for any reasons, and the identity of documents concerning same.

**Area of Inquiry No. 11** is overly broad, unduly burdensome and seeks information that is irrelevant and not proportional to the needs of the case. As written, this AOI seeks PCR relating to asbestos-containing and/or non-asbestos-containing brakes, clutches and/or gaskets, of any type whatsoever, in any vehicle ever manufactured and sold by Ford, ever. Again, Mr. Fish's allegations of exposure to Ford products is limited as previously described, and specific product identification is limited to a brake job on a friend's 1974 Mustang. Taking into account the

---

[2] Regarding AOI 9, as background, a phenolic converter reactor is a non-serviceable part contained within the torque converter, which sits between the engine and transmission.

[3] Regarding AOI 19, the reference to "Ford Manufacturing Standards related to ZF10 labeling" comes from a document concerning the application and use of a spray-on deadener typically used on body panels such as doors, quarter panels and deck lid assemblies utilizing an airless sprayer.

nature of the claims, the type of evidence needed to prove those claims and the sources of information readily available to Plaintiffs, the research requested is clearly not relevant or proportional to the needs of this case. Ford's objections should be sustained. *See Young v. UPS of Am., Inc.,* 2010 U.S. Dist. LEXIS 30764.[4]

**Motion Granted. Plaintiffs' request is overly broad and unduly burdensome. Plaintiffs' request is not proportional to the issues presented in Plaintiffs' claims.**
**Plaintiffs may submit new Areas of Inquiry limiting their inquiry to Ford vehicles they can prove Plaintiff actually replaced or repaired brakes alleged to contain asbestos during the relevant time period of 1970-1979.**

12. Efforts and attempts you made to create, or include for sale non-asbestos-containing products, including the technical and engineering feasibility of such non-asbestos products; the safety aspects, both pro and con, of said non-asbestos products; and the cost of said non-asbestos products, and the identity of all documents concerning same.

20. All representations or statements, verbally or in writing, to any individual or entity, including any federal, state, or local governmental agency or entity or any of your past insurers that your vehicles would not operate safely or as designed if asbestos-containing friction materials were replaced with asbestos-free friction materials and the identity of documents concerning same.

**Areas of Inquiry Nos. 12 and 20** are overly broad, unduly burdensome and seek information that is neither relevant nor proportional to the issues in this litigation, particularly as these AOI seek all "efforts and attempts" taken during a multi-year, multi-personnel, technical and complex process. Safety is a primary concern for Ford. Therefore, steps and actions taken toward safety are numerous. The burden of providing information regarding every effort or attempt taken toward creating, or including for sale, any non-asbestos-containing products whatsoever is substantial and outweighs the likely benefit to Plaintiffs given the specific allegations advanced by Plaintiffs in this matter especially when it is not limited to any time frame, vehicle, product, component or the identification of the individual, or entity or agency or past insurer being referenced. *See Young v. UPS of Am., Inc.,* 2010 U.S. Dist. LEXIS 30764. Additionally, the information requested is duplicative of what Plaintiffs already requested through other methods of discovery (see Exhibit D at Nos. 7, 8; and Exhibit L, Ford's Answers to Plaintiff Richard Roop's Interrogatories, dated July 20, 2015 at No. 17), including prior deposition testimony of Ford's corporate representative on similar issues in other matters (see Exhibit M, Amended Notice of Videotaped Deposition of Defendant Ford Motor Company in the matter of James Waite (hereinafter "Waite AOI") at No. 10; Exhibit N, Depositions of Matthew Fyie in the matter of *Waite v. AII Acquisition Corp.,* dated April 28, 2016 and May 11, 2016 at pgs 34-35).[5] Consequently, Plaintiffs' attempt at seeking similar information via

[4] Ford informed Plaintiffs that certain PCR are currently being maintained at Ford's counsel's office in Dearborn, Michigan, and that it would allow an inspection of them at a mutually agreeable time. See Exhibit J. Plaintiffs have refused to discuss any such review.

[5] Plaintiffs' counsel were also counsel of record in the *Waite* case, and presumably already have these materials. Ford will not object to Plaintiffs' use or reference of these materials in this case.

deposition is unreasonably cumulative or duplicative as Plaintiffs' counsel had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall*, 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4.[6] Accordingly, Ford's objections should be sustained.

**Motion Granted.**
**Plaintiffs may submit new Areas of Inquiry limiting their inquiry to Ford vehicles they can prove Plaintiff actually replaced or repaired brakes alleged to contain asbestos during the relevant time period of 1970-1979.**

13. The profitability of Ford's use of asbestos-containing friction products as opposed to asbestos-free alternatives and the identity of all documents concerning same.

14. Ford's cost-benefit analysis supporting its continued use of asbestos-containing friction products and the identity of all documents concerning same.

**Areas of Inquiry Nos. 13 and 14** are overly broad, unduly burdensome and seek information that is irrelevant and not proportional to the needs of the case. For the same reasons as stated above, these AOI are not limited to a reasonable or relevant time period, and are not limited to a specific vehicle or friction components reasonably at issue in this case. *See Young v. UPS of Am., Inc.,* 2010 U.S. Dist. LEXIS 30764. Again, Mr. Fish's allegations of exposure to Ford products is limited as previously described, and specific product identification is limited to a brake job on a friend's 1974 Mustang. Accordingly, Ford's objections should be sustained.

**Motion Granted. Plaintiffs' request is overly broad and unduly burdensome. Plaintiffs' request is not proportional to the issues presented in Plaintiffs' claims.**
**Plaintiffs may submit a new AOI which is more specific to the relevant time period (1970-1979) and vehicles that Plaintiff can prove he repaired or replaced brakes containing asbestos.**

16. Packaging, distribution and product identification of your asbestos-containing products, including the aftermarket distribution of your asbestos-containing products, including but not limited to the appearance of packaging in which Ford supplied replacement friction products, and the identity of documents concerning same.

17. Warnings, cautions or labels regarding asbestos hazards provided with your asbestos containing products; why these warnings or cautions were made when they were made and how the decision was made regarding what language to include in said caution or warning, and the identity of documents concerning same.

18. The identity of documents and any other information that demonstrates or otherwise reflects that you actually placed the alleged cautionary statements you claim accompanied and/or

---

[6] Ford informed Plaintiffs it would designate a corporate representative to testify, generally, regarding these AOI. See Exhibit J. Beyond Ford's offer to produce a witness to discuss these broad AOI generally, Plaintiffs refused to narrow the scope.

were placed in the boxes that contained your friction products as sold to consumers between the years of 1980 and 1995 and the identity of documents concerning same.

**Areas of Inquiry Nos. 16-18** are overly broad, unduly burdensome and seek information that is neither relevant nor proportional to the issues in this litigation, particularly because they seek information regarding all asbestos-related warnings, cautions or labels provided with any asbestos products whatsoever, and are not limited to the vehicles or friction components reasonably at issue in this litigation or to a reasonable or relevant time frame. *See Young v. UPS of Am., Inc.*, 2010 U.S. Dist. LEXIS 30764. Again, Mr. Fish's allegations of exposure to Ford products is limited as previously described, and specific product identification is limited to a brake job on a friend's 1974 Mustang. Moreover, Mr. Fish's last alleged exposure to Ford friction products occurred in 1979. Therefore, the materials sought in AOI No. 18, from 1980 to 1995, are not relevant in this case. Additionally, certain information requested is duplicative of what Plaintiffs already requested through other methods of discovery (see Section II. C.), including prior deposition testimony of Ford's corporate representative on similar issues in other matters (see FN 5). Consequently, Plaintiffs' attempt at seeking certain information via deposition is unreasonably cumulative or duplicative as Plaintiffs had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall*, 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4.[7] Accordingly, Ford's objections should be sustained on these AOI.

**Motion Granted. Plaintiffs' request is overly broad and unduly burdensome. Plaintiffs' request is not proportional to the issues presented in Plaintiffs' claims.**
**Plaintiffs may submit a new AOI which is more specific to the relevant time period (1970-1979) and Ford vehicles Plaintiff can prove he repaired or replaced brakes containing asbestos.**

21. The identity of the first 40 lawsuits pertaining in any manner to allegations of personal injury caused by exposure to asbestos to which you were a party (including the case caption, the docket/case number, the name of the court in which the case was pending, and the identity of the lawyers that represented you), the specific nature of the allegations in each case, and the date and substance of any findings by the court and/or the amount of any decrees, verdicts or judgments and the identity of documents concerning same.

22. The location and contents of authentic copies of your answers to interrogatories in the lawsuits that are the subject of Area of Inquiry 21 and the identity of documents concerning same.

25. For each of the four class actions identified in Exhibit A hereto, the identity of following:

a. The pleadings filed by each party including complaint, answers, motions, and all other pleadings (or the analogs thereof if the proceeding/litigation describes such documents using different terms);
b. All documents produced by Ford in each proceeding/action;

[7] Ford informed Plaintiffs it would designate a corporate representative to testify, generally, regarding these AOI. See Exhibit J. Plaintiffs refused this offer.

c. All documents produced by any Plaintiffs or other parties to the lawsuit in each proceeding/action;
d. All discovery responses filed or served by any party in the proceeding, including, but not limited to, interrogatories, requests for production of documents and requests for admissions in each proceeding/action;
e. All stipulations of fact from each proceeding/action;
f. All affidavits or other sworn statements produced or obtained by Ford or any other party in each proceeding/action; and
g. All deposition transcripts and trial testimony from each proceeding/action, including all exhibits thereto.

**Areas of Inquiry Nos. 21-22 and 25** are overly broad and seek irrelevant information, including because the lawsuits referenced are not substantially similar to those involved in the subject lawsuit and cannot be related to Mr. Fish's alleged exposure. Factors such as the plaintiff's occupation, medical history, source of the alleged exposure (i.e., premises vs. vehicle, model/model year of vehicle, type of vehicle component, etc.), as well as the pertinent time periods, will vary between the particular incidents. In addition, these AOI are unduly burdensome because they are not limited to a reasonable time frame or scope (these lawsuits range from 1977 to 1984, which is a 7 year time frame), or the specific medical history of the plaintiffs or related to the specific claims asserted by those plaintiffs, and there has been no showing that such information is in any way related to the claims at issue in this lawsuit. *United States Home Corp. v. Settlers Crossing*, LLC, No. DKC-08-1863, 2013 WL 553282, at *7 (D. Md. Oct. 3, 2013) (protective order is proper when discovery sought has no bearing on an issue of material fact). Moreover, this AOI fails because the witness would simply read the discovery responses, affidavits, pleadings, transcripts, and so on from potentially 40 plus lawsuits (if they are even available in Ford's files). Plaintiffs do not need a witness to recite what is already stated in a document. In addition, Plaintiffs have failed to identify with reasonable particularity what exactly the Plaintiffs want the witness to know. With such a broad time frame, 40 plus lawsuits at issue, and a request for all pleadings and discovery produced or served in other unrelated, dissimilar cases, such a request is daunting and lacks reasonable particularity. Additionally, certain information requested is duplicative of what Plaintiffs already requested through other methods of discovery (see Section II. C.), and is currently the subject of a pending motion to compel in this matter with regard to that discovery.[8] See Plaintiffs' Second Motion to Compel, Ford's Opposition and Plaintiffs' Reply – ECF #420. Consequently, Plaintiffs' attempt at seeking the similar information via deposition is unreasonably cumulative or duplicative as Plaintiffs had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall*, 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4.

Finally, if Plaintiffs are interested in the procedural history of lawsuits, then Plaintiffs may seek out the public dockets of those cases and undertake this burdensome search. Under

[8] Indeed, Ford produced nearly 600 pages of prior answers, responses and deposition transcripts from prior lawsuits. See FISH 000067-000665. Further, with regard to AOI No. 25, Ford indicated in its response to Exhibit E at No. 14, that after a reasonable search, Ford was unable to locate any information or documents regarding any asbestos-related "class actions" as identified in Exhibit A. As such, there is no further or additional information that can be obtained on this matter through the deposition of a corporate representative.

Rule 26 and the proportionality factors, since there is a less burdensome way for the Plaintiffs to obtain the information, Plaintiffs should be required to take those steps first before demanding that Ford do so here. Accordingly, Ford's objections should be sustained. *See Young v. UPS of Am., Inc.,* 2010 U.S. Dist. LEXIS 30764.

**Motion Granted.**
**Plaintiffs litigated this issue on January 13, 2017 and any inquiry must be consistent with the Court's rulings.**

23. The contents of the multi-page "slide-tape script and (2) brochures regarding asbestos poisoning" identified in the June 1, 1981 Inter Office memo attached hereto as Exhibit A and how the slide-tape script and brochures regarding asbestos poisoning came to be and the identity of documents concerning same.

24. The identity, location and contents of the transcript (inclusive of all exhibits) of Mr. Arne Anderson to which Exhibit A hereto was marked as Exhibit 5 and the identity of documents concerning same.

26. The identity of all "Annual Industrial Hygiene Discussionals" (hereinafter referred to as "Discussional(s)") or conferences wherein the dangers of asbestos were discussed that you were invited to and/or attended, to include identifying who on your behalf attended each such Discussional, the identity of other attendees and the matters/topics discussed/addressed at each such Discussional, your participation and/or membership, the purpose and objective of the Discussional(s), and the documents relating to such Discussional(s) (including but limited to not any invitations to attend, agendas, meeting minutes, "File Memoranda" (such as the one attached hereto as Exhibit B) and any other documents relating to such "Discussional(s)" or conferences. Please further be prepared to state whether you possess a complete copy of or any portion thereof of the attached File Memorandum dated November 19, 1970 and, if so, be prepared to identify the length of the document, the contents of the document and where a copy is maintained.

**Areas of Inquiry Nos. 23-24, 26** seek information that is overly broad, unduly burdensome and neither relevant nor proportional to the issues in this litigation, particularly because they seek information which is far beyond the relevant time period at issue in this litigation, and seek information on issues not substantially similar to those involved in the subject lawsuit. Again, and as provided above, Mr. Fish's allegations of exposure to Ford products is limited to a friend's 1974 Mustang. Moreover, the document discussing the slidetape script (AOI No. 23) is dated two years after Mr. Fish's last date of alleged exposure in 1979. And the internal Ford memorandum in AOI No. 23 discusses a proposed "slide-tape script" and brochures to be provided to Ford dealership technicians. At no point in time does Mr. Fish claim to either have been employed as a technician at a Ford dealership, or to have purchased any Ford replacement parts himself from a Ford dealership. As such, the information requested is not relevant or proportional to the needs of this case. *See Young v. UPS of Am., Inc.,* 2010 U.S. Dist. LEXIS 30764. Additionally, certain information requested is duplicative of what Plaintiffs already requested through other methods of discovery (see Section II. C.; and Exhibit O, Ford's Responses to Plaintiff's Richard Roop's Requests for Production of Documents, dated July 20,

2015, at Nos. 1, 2, 5). [9] Consequently, Plaintiffs' attempt at seeking the similar information via deposition is unreasonably cumulative or duplicative as Plaintiffs had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall*, 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4. Accordingly, Ford's objections should be sustained.

**Motion Granted.**
**Plaintiffs may submit a new AOI which is more specific to the relevant time period (1970-1979) and Ford vehicles Plaintiff can prove he worked on to repair or replace brakes containing asbestos.**

27. When Ford first conducted any epidemiology studies and why, and the identity of all documents concerning same.

Area of Inquiry No. 27 is overly broad, unduly burdensome and seeks information that is neither relevant to the issues in this litigation, particularly because this AOI is not limited to a reasonable scope in that it is not limited in any manner to those epidemiology studies pertaining to asbestos or to those friction vehicle components at issue in this matter. As written, this AOI seeks to have Ford prepare a witness to testify about any epidemiology study whatsoever – regardless of whether or not it relates to asbestos, or to the brake components or vehicles (here a single 1974 Mustang) at issue in this case. Such a request is not relevant given that it is not even limited to asbestos or the time frame of the alleged exposure to Mr. Fish. *See Young v. UPS of Am., Inc.*, 2010 U.S. Dist. LEXIS 30764.

**Motion Granted.**
**Plaintiffs may submit a new AOI which is more specific to the relevant time period and vehicles in question and must also be related to asbestos exposure from brake products.**

28. All Ford documents whether or not disseminated either internally or externally that reference asbestos or safety, including but not limited to warnings, and the identity of all documents concerning same.

29. Training regarding the actual or potential dangers of asbestos on human health provided by Ford Motor Company to mechanics of Ford Motor Company franchised dealerships between 1950 through the present, and the identity of all documents concerning same.

30. Your knowledge of the hazards of asbestos, and the identity of Ford publications/documents that concern or contain advisories, cautions, disclaimers, directives, hazards, injuries, mandates, precautions, safety statements, training, and/or warnings regarding asbestos exposure.

---

[9] With regard to AOI No. 24, Ford previously produced in the Roop matter over 2,500 pages of Arne Anderson transcripts and corresponding exhibits. With regard to AOI No. 26, Ford indicated in its responses that it was unable to locate any information or documents regarding any Annual Industrial Hygiene Discussionals. With regard to AOI No. 24, Ford was only able to locate a document generally titled "script for a slide presentation," which is located on Ford's Asbestos DVD at FAFD 015349-015366. After a reasonable inquiry, Ford is unable to confirm, however, if this is the document referenced in AOI No. 24. As such, there is no further or additional information that can be obtained on this matter through the deposition of a corporate representative.

**Areas of Inquiry Nos. 28 – 30** are overly broad, unduly burdensome and seek documents that are neither relevant nor proportional to the issues in this litigation, particularly because they seek all documents that depict, discuss, reference or communicate the safety measures to be taken with regard to asbestos or any asbestos-containing products whatsoever, and are not limited to the vehicles or friction components reasonably at issue in this litigation. Further, the information requested is not limited to a reasonable or relevant time frame (AOI Nos. 28 and 30 are not limited in time at all, and AOI No. 29 spans nearly 70 years). In addition, no specific training (AOI 29) and no specific publication or documents (AOI 30) are identified. Nor is any document identified by name, title, date or author leaving Ford to guess what specific materials are being requested. Indeed, as written, these AOI seek information for any documents that merely reference asbestos (e.g. AOI 28). And again, Mr. Fish's allegations of exposure to Ford products is limited to a brake job on a friend's 1974 Mustang. Further, Mr. Fish was not a Ford employee. As such, to the extent these AOI seek information pertaining to any corporate policies concerning Ford employee safety, they are not relevant to this case with respect to a non-Ford employee. [10] *See Young v. UPS of Am., Inc*., 2010 U.S. Dist. LEXIS 30764. Additionally, certain information requested is duplicative of what Plaintiffs already requested through other methods of discovery, including prior deposition testimony of Ford's corporate representative generally on these issues in other matters.[11] Consequently, Plaintiffs' attempt at seeking the similar information via deposition is unreasonably cumulative or duplicative as Plaintiffs had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall,* 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4. Accordingly, Ford's objections should be sustained.

**Motion Granted.**
**Plaintiffs may submit a new AOI which is more specific to the relevant time period (1970-1979) and specific vehicles in question Plaintiffs can prove Plaintiff worked on that contributed to his exposure.**

31. All information concerning hazards of asbestos attendant to work on and/or around vehicles during maintenance, service and/or repair that Ford received and/or became aware of. This includes but is not limited to any information concerning work practices and/or lung abnormalities in automobile mechanics.

**Area of Inquiry No. 31** seeks all information concerning hazards of asbestos that Ford received and/or became aware of. This AOI is overly broad, unduly burdensome and seeks information that is not relevant to the issues in this litigation, particularly because it does not identify any particular source from which Ford would have received this information, and instead literally seeks information that Ford may have received from virtually anyone, at any time. Nor

---

[10] Again, Ford informed Plaintiffs it would designate a corporate representative to testify, generally, regarding these AOI. See Exhibit J. Plaintiffs refused this offer and refused to narrow the scope of these AOI.

[11] Plaintiffs' counsel here has taken several depositions of Ford corporate representatives in other matters. Ford has also provided them with several transcripts, and through their relationships with other plaintiffs' firms, have access to many more. In total, Plaintiffs' counsel has possession of or access to in excess of 120 deposition transcripts of Ford corporate representatives that have been taken in asbestos litigation, which include general testimony regarding the AOI referenced here. See list attached as Exhibit P.

is it limited to the 1974 Mustang, any type of service/repair, or any specific component or part at issue. Such information is not relevant to this case and is far out of proportion to Plaintiffs' claims in this matter, which involves the brakes on a 1974 Mustang. *See Young v. UPS of Am., Inc.,* 2010 U.S. Dist. LEXIS 30764.[12] Additionally, certain information requested is duplicative of what Plaintiffs already requested through other methods of discovery, including prior deposition testimony of Ford's corporate representative generally on these issues in other matters. See FN 10. Consequently, Plaintiffs' attempt at seeking the similar information via 22 deposition is unreasonably cumulative or duplicative as Plaintiffs had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall,* 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4. Accordingly, Ford's objections should be sustained.

**Motion Granted.**
**Plaintiffs may submit a new AOI which is more specific to the relevant time period (1970-1979), asbestos containing brake repair and replacement and vehicles in question.**

32. Your document retention policy, to include detailing your document retention policy generally (and any exceptions thereto) and identify all documents concerning your document retention policy/ies. This area of inquiry includes past and present policies, practices, or procedures regarding your handling, safekeeping or transporting of your documents (commonly referred to as "record retention" or "document retention") and the identity of all documents concerning same. This includes but is not limited to:

a. The identity of each present and former corporate department, division or subdivision responsible for maintaining records;
b. How the records were/are kept, e.g., in boxes, files, on microfilm, microfiche or computer tape or disk;
c. Dates that the record keeping system covers;
d. The location(s) where such records are/were maintained;
e. Whether there are any indices, databases, lists or other compilations summarizing or identifying the documents.
f. Whether the documents currently maintained include the universe of documents that ever existed.

33. The manner in which you maintained in the regular course of business documents between 1930 until you stopped selling, distributing, manufacturing, supplying, installing and/or marketing asbestos-containing vehicles and/or products (e.g. how were your documents maintained prior to any uniform "centralization" efforts, if any, pursuant to which documents were moved to/housed in a "repository" or "repositories") and all documents concerning the manner in which documents are maintained.

**Areas of Inquiry Nos. 32 and 33** seek information about Ford's document retention and storage policies. These AOI are overly broad, unduly burdensome and seek information that is irrelevant and not proportional to the needs of the case, particularly as they seek documents of any kind reflecting Ford's document retention policy and document storage dating as far back as

[12] Again, Ford informed Plaintiffs it would be willing to meet and confer further on this topic if Plaintiffs would agree to an AOI that was relevant and more proportional to this case. See Exhibit J. Plaintiff declined.

1930. First, the time period at issue is breathtaking – it seeks testimony over an 85-year time period. This massive scope alone supports Ford's request for a protective order. *See Young v. UPS of Am., Inc.*, 2010 U.S. Dist. LEXIS 30764. Moreover, the manner in which Ford maintains documents for document retention purposes is not relevant to the allegations in this case. This simply has nothing to do with Mr. Fish or the 1974 Mustang that he allegedly worked on. "Discovery on discovery" is not an appropriate topic of discovery and numerous courts have disallowed such discovery. *See Banks v. St. Francis Health Ctr., Inc.*, 2015 WL 7451174, at *7-8 (D. Kan. Nov. 23, 2015). This Court should disallow such discovery here.

Further, Plaintiffs have not articulated why information relating to Ford's document retention program is relevant or proportional to the needs of this case. They have not even identified a particular document or group of documents at issue. *O'Connor v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 3738, 2016 WL 107461 (N.D. Cal. 2016) (concluding that overbroad discovery fails Rule 26(b)'s proportionality requirements); *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 U.S. Dist. LEXIS 5616, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) (holding that "a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case."). [13]

Finally, AOI No. 32 is further objectionable because it is so broad and expansive (i.e., seeking "all documents") that it potentially seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. For example, how documents were maintained prior to any uniform centralization efforts, or which documents were moved to/housed in any particular repository may get at materials created in preparation for litigation. Indeed, courts disfavor depositions of this nature because they distract the parties from merits issues and instead force them to spend time and resources on nonmerits issues that do nothing to resolve the pending dispute. [14] To the extent this AOI requests information regarding Ford's Suspension Orders, such documents are protected from disclosure by the attorney client privilege and work product doctrine and have been upheld as privileged by numerous courts. Suspension Orders are documents prepared and issued exclusively by Ford's Office of the General Counsel, which "suspend" or may be considered "exceptions" to Ford's records retention program for various categories of documents that are or may be relevant to pending or threatened litigation.[15]

---

[13] Plaintiffs attempt to seek essentially the very same information that their counsel attempted to seek in another federal case which was pending in the U.S. District Court for the Southern District of Florida – *James John Waite, Jr. v. All Acquisition Corp.*, Case No. 18-CV-62359-BLOOM/VALLE. That request was denied when the court determined such information was not relevant. (See Exhibit Q, Waite Court Order, dated May 3, 2016).

[14] *See, e.g., Cunningham v. Std. Fire Ins. Co.*, 2008 WL 2668301, at *5 (D. Colo. Jul. 1, 2008) (denying 30(b)(6) witness on retention policies); *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 363-64 (N.D. Tex. 2013) (same); *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 4547039, at *2-3 (S.D.N.Y. Sept. 12, 2014) (denying motion to compel discovery into defendant's search methodology); *Orillaneda v. French Culinary Institute*, 2011 WL 4375365, at *6–9 (S.D.N.Y. Sept. 19, 2011) (denying discovery into defendant's methods for searching and maintaining documents).

[15] This should not be a new argument to Plaintiffs' counsel as this very argument including a supporting declaration by Ford's in-house counsel, Shelley Merkin (attached for reference as Exhibit R) was previously addressed with Plaintiffs' counsel and the court in the Waite case. Notably, the court in that case determined the AOI not relevant, and therefore the court deemed it unnecessary to address the privilege claims. See also, recent court rulings on this issue in California (Exhibit S, *Reyes v. Ford Motor Company*, Transcript of Hearing dated October 14, 2016 at pg.

**Motion Granted consistent with the Court's rulings on January 13, 2017.**

34. How you maintained, collected and assembled your documents prior to placement into a repository or other centralized location for purposes of litigation and identify all documents concerning protocols for such maintenance, collection and assembly.

35 How you maintained, collected and assembled your documents for placement into a repository or other centralized location for purposes of litigation and identify all documents concerning protocols for such maintenance, collection and assembly.

36. Whether any documents concerning your design and manufacture of asbestos-containing vehicles, your use/sale of asbestos-containing products, asbestos-related testing, exposure levels (whether on your premises, during the manufacturing process, when servicing your vehicles or otherwise), knowledge of the hazards of asbestos, claims your vehicles could not operate safely or as designed without asbestos-containing braking systems, your employees' asbestos-related injuries/disease, the design of your vehicles and/or the friction products used in your vehicles, training materials, warnings (including those you claim to have provided on products you sold), and any other subject matters relevant to the claims and defenses in this case that existed at one time at one time have been destroyed, lost, discarded and/or otherwise are unavailable and, if so, identify what documents are no longer available, when precisely those documents became unavailable and how it is that the documents are no longer available and why, and the identity of all documents concerning same.

37. What Ford's Asbestos Friction Collection DVD ("DVD collection") is comprised of, to include detailing the origins of the "DVD collection," from where the documents came and whether the "DVD collection" contains the universe of documents in your possession, custody or control concerning your design and manufacture of asbestos-containing vehicles, your use/sale of asbestos-containing products, asbestos-related testing, exposure levels (whether on your premises, during the manufacturing process, when servicing your vehicles or otherwise), knowledge of the hazards of asbestos, claims your vehicles could not operate safely or as designed without asbestos-containing braking systems, product change requests, engineering specification warnings, packaging, your employees' asbestos-related injuries/disease, or any other subject matters relevant to the claims and defenses in this case and the identity of all documents concerning same.

38. How the documents compromising the "DVD collection" (and any supplements thereto) were selected for inclusion in the "DVD collection," to include identifying each individual who performed the search for documents, how the search was performed (including whether search terms were used and/or inputted into any databases or searchable formats), how any databases, lists, indices or other compilations utilized in searching for documents were formed/generated, what search terms were used and how such search terms are/were arrived at (including but not limited to the precise terms used in any search undertaken in each search for documents), and

---

57) and Kentucky (Exhibit T, *Sheets v. Ford Motor Company* Court Order dated December 16, 2016) state courts where the courts there have sustained Ford's privilege claims over such documents.

whether any documents identified during a search were not added to the "DVD collection," and if so, who made that decision and what method is used to identify which documents identified during a search are not included (i.e. privilege log etc.), how it is that the documents were added to the "DVD collection" via supplementation, and how it has been determined that past searches failed to capture relevant documents that resulted in supplementations to the "DVD collection" and the identity of documents concerning same.

39. All efforts to index, organize or otherwise make the information in any historic document collections accessible and the identity of documents concerning same, including:

a. Whether Ford its counsel, its insurers or any other entity has ever undertaken to digitize any or all of the Defendants' document repository or other collection of historic documents regarding asbestos and the asbestos litigation;
   i. If so, what efforts were undertaken;
   ii. What the result of such efforts were;
   iii. The present custodian of the results;
   iv. If the results are no longer in existence, what happened to them;
   v. The identity of every entity that has ever received a copy of or been given access to the results.

b. Whether Ford, its counsel, its insurers or any other entity has ever undertaken to index, categorize or otherwise organize any or all of the Abex or other collection of historic documents regarding asbestos and the asbestos litigation;
   i. If so, what efforts were undertaken;
   ii. What the result of such efforts were;
   iii. The present custodian of the results;
   iv. If the results are no longer in existence, what happened to them;
   v. The identity of every entity that has ever received a copy of or been given access to the results.

51. The documents requested in Plaintiffs' written discovery requests in this case and the documents produced by you in this case.

52. The source, chain of custody, author, recipient and/or authenticity of any document you produced in this case, including all documents on the DVD collection and other documents produced by you separately.

**Areas of Inquiry Nos. 34-39 and 51-52** are overly broad, unduly burdensome and seek irrelevant information because they seek improper "discovery on discovery." First, AOI Nos. 36-39 contain 153, 125, 180 and 208 words each, respectively. On its face, an AOI that is the length of a paragraph (or two) cannot be stated with reasonable particularity and fails to meet the basic requirements of a Rule 30(b)(6) topic and cannot be anything but overly broad. Second, the manner in which Ford maintains or searches for documents in litigation or otherwise is not relevant to the allegations in this case. This simply has nothing to do with Mr. Fish or the 1974 Mustang that he allegedly worked on. Courts look upon such discovery with skepticism and it is strongly discouraged. *Freedman v. Weatherford Int'l*, 2014 U.S. Dist. LEXIS 133950 (S.D.N.Y. Sep. 12, 2014); *See also Banks v. St. Francis Health Ctr., Inc.,* No. 15-cv-2602, 2015 WL 7451174, at *7-8 (D. Kan. Nov. 23, 2015); *See also, Hanan v. Corso*, 1998 WL 429841, *7

(D.D.C. April 24, 1998) (denying discovery on discovery on the ground that "plaintiff cites no authority for the proposition that the Federal Rules of Civil Procedure contemplate that discovery is itself a fit subject for discovery. To the contrary, discovery is only permitted of information which is either relevant or likely to lead to admissible evidence," and "[t]o add another level of discovery in every case is fraught with peril."); *Martin v. Allsatate Ins. Co.,* 292 F.R.D. 361 (N.D. Tex. April 4, 2013)(granting defendant's motion for protective order and denying plaintiff's request for a 30(b)(6) deposition on defendant's document retention policies, computer systems and efforts to respond to discovery on the ground that the topics were overbroad and irrelevant.). Third, Plaintiffs have not articulated why information relating to Ford's document collection, search efforts or retention efforts is relevant in this case. Nor have Plaintiffs identified any particular document or types of documents that are at issue – they literally seek all documents for all time without limitation. It is also not limited to any time frame. Fourth, the request to itemize every document or piece of data that might be relevant to this case that may have existed at one time but was destroyed over the years in the ordinary course of business is not even feasible and not required by the Federal Rules of Civil Procedure, is disproportional and unduly burdensome, and is not relevant to any claim or defense. Accordingly, Ford's objections should be sustained for these reasons alone. *See Young v. UPS of Am., Inc.*, 2010 U.S. Dist. LEXIS 30764.

These AOI are further objectionable, however, because they are so broad and expansive, that they potentially seek information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Indeed, some of the AOI even deliberately and improperly seek work product or privileged information – they demand information prepared "for purposes of litigation." As stated in AOI No. 33, courts disfavor depositions of this nature because they distract the parties from merits issues and instead force them to spend time and resources on nonmerits issues that do nothing to resolve the pending dispute. See FN 14.

**Motion Granted consistent with the Court's ruling on January 13, 2017.**

40. All workers' compensation claims filed by Defendant's employees alleging asbestos related diseases (asbestosis, lung cancer, mesothelioma, gastrointestinal cancer, etc.) and the identity of all documents concerning same.

**Area of Inquiry No. 40** is overly broad, unduly burdensome and seeks information that is neither relevant nor proportional to the issues in this litigation, particularly because it seeks all workers' compensation claims filed by Ford's employees wherein they allege an asbestos related disease. First, Mr. Fish was never a Ford employee. As such, information pertaining to workers' compensation claims filed by Ford employees is neither relevant nor proportional to the needs of this case with respect to a non-Ford employee. Second, the facts and circumstances surrounding other claims, lawsuits or incidents are not substantially similar to those involved in the subject lawsuit. For example, factors such as the plaintiff's occupation, medical history, source of the alleged exposure, as well as the pertinent time periods, will vary between the particular incidents. In addition, this AOI is not limited to a reasonable time frame or scope, or the specific medical history of Mr. Fish or related to the specific claims asserted by Plaintiffs, and there has been no showing that such information is in any way related to the claims at issue in this lawsuit.

Third, compliance with these AOI would require the review of literally tens of thousands of paper files spanning several decades at a substantial expense to Ford without any corresponding benefit to Plaintiffs. See Exhibit U, Affidavit of Greg Trulu. Moreover, workers' compensation files by their nature contain personal identifying information and medical information which is protected by federal and state law and invades the privacy rights of the claimants. Additionally, with respect to contested claims, such files also frequently contain attorney-client protected communications and documents protected by the work product doctrine. Accordingly, Ford's objections should be sustained. *See Young v. UPS of Am., Inc.*, 2010 U.S. Dist. LEXIS 30764.

**Motion Granted.**
**Plaintiffs may submit a new AOI limiting the time period and limiting the AOI to asbestos related diseases only.**

41. The existence of any data regarding the incidence of asbestos-related diseases (asbestosis, lung cancer, mesothelioma, gastrointestinal cancer, etc.) among employees or former employees of the Defendant and the specifics of what information exists, in what form, where, and whether it has ever been disclosed to any person who was not an employee of the Defendant, including Defendants' employees, litigation consultants, non-litigation consultants, government or regulatory agencies or any other person or entity and the identity of all documents concerning same.

**Area of Inquiry No. 41** is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportional to the issues in this litigation, particularly because it seeks information that is not limited in scope or time, and instead seeks information regarding the existence of any data regarding the incidence of asbestos-related diseases (asbestosis, lung cancer, mesothelioma, gastrointestinal cancer, etc.) among any employees or former employees of Ford. Further, the request for "any data" lacks reasonable specificity and leaves Ford guessing at what Plaintiffs are seeking in this AOI. Again, Mr. Fish's allegations of exposure to Ford products is limited to a brake job on a friend's 1974 Mustang. As such, information pertaining to "any data" available to Ford employees and "any other person or entity" is neither relevant nor proportional to the needs of this case with respect to a non-Ford employee and an alleged exposure to a 1974 Mustang. Finally, this AOI seeks the personal, private medical information of non-parties, which should not be discoverable. Plaintiffs have no basis to discover such information or invade the privacy rights of non-parties. *See A Helping Hand, LLC v. Baltimore Co., Maryland*, 295 F. Supp.2d 585, 592 (D. Md. 2003) (determining that, when weighing the need for the information versus the harm in producing it, individualized patient data was not needed to defend against the suit). Additionally, certain information requested is duplicative of what Plaintiffs already requested and obtained through deposition testimony of Ford's corporate representative on similar issues in other matters (see for example Exhibit M at No. 13; and Exhibit N at pgs 204-218 and 333-334). Consequently, Plaintiffs' attempt at seeking similar information via deposition is unreasonably cumulative or duplicative as Plaintiffs had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall*, 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4. Ford's objections should be sustained. See Young v. UPS of Am., Inc., 2010 U.S. Dist. LEXIS 30764.

**Motion Granted.**

42. The supplier and/or manufacturer of any asbestos, asbestos-containing products and/or component parts of products manufactured or sold by Ford and the identity of all documents concerning same.

44. Material Safety Data Sheets created for all asbestos-containing friction materials manufactured, distributed, sold, used, and/or specified by Defendant, and provide a witness to authenticate and discuss the creation of the Material Safety Data Sheets.

**Area of Inquiry Nos. 42 and 44** are overly broad, unduly burdensome and seeks information that is neither relevant nor proportional to the issues in this litigation, particularly because they seek information regarding any asbestos-containing products and/or component parts of products manufactured or sold by Ford, and are not limited to the vehicles or friction components reasonably at issue in this litigation. These AOI also do not identify any supplier or manufacturer, any time frame (except apparently for all time), or to any product or component. Again, Mr. Fish's allegations of exposure to Ford products is limited to a brake job on a friend's 1974 Mustang. Additionally, certain information requested is duplicative of what Plaintiffs already requested through other methods of discovery, including prior deposition testimony of Ford's corporate representative on these similar issues in other matters (see for example, Exhibit M at No. 14; and Exhibit N at pgs. 146, and 367-368). Consequently, Plaintiffs' attempt at seeking similar information via deposition is unreasonably cumulative or duplicative as Plaintiffs had sufficient opportunity to discover the information previously from a source that was more convenient and less burdensome. *Hall*, 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4. Ford's objections should be sustained. *See Young v. UPS of Am., Inc.*, 2010 U.S. Dist. LEXIS 30764.

**Motion Granted.**
**Plaintiffs may submit a new AOI which is more specific to the relevant time period (1970-1979) and to Ford vehicles Plaintiff can prove he worked on for brake repair or replacement and those brakes contained asbestos.**

45. All demands from any other entity to the Defendant that the Defendant indemnify such entity from asbestos personal injury claims arising from the use by such entity of asbestos containing friction products manufactured by the Defendant and the identity of all documents concerning same.

**Area of Inquiry No. 45** is overly broad, unduly burdensome, and seeks information that is not relevant to the issues in this litigation, particularly because it seeks information that is not limited in scope or time, and instead seeks all demands from any other entity – which was not identified – to Ford that Ford indemnify such entity from asbestos personal injury claims arising from the use by such entity of asbestos containing friction products manufactured by Ford, at any time during Ford's entire corporate history. Facts and circumstances surrounding any demand for indemnification have no bearing on this lawsuit involving Mr. Fish. *GeoMetWatch Corp. v. Hall*

U.S. Dist. 2016 LEXIS 91274 (2016 Utah) (holding indemnification agreements were not relevant to any claim or defense of any party). Likewise, Plaintiffs here have failed to demonstrate the agreement's relevancy under Rule 26(b)(1). Moreover, such a request can more narrowly be answered through an interrogatory response if it is actually tailored to this case involving Mr. Fish. *See Hall*, 2005 U.S. Dist. LEXIS 34940 *22. Ford's objections should be sustained. *See Young v. UPS of Am., Inc.,* 2010 U.S. Dist. LEXIS 30764.

**Motion Granted. Plaintiffs' request is overly broad and unduly burdensome. Plaintiffs' request is not proportional to the issues presented in Plaintiffs' claims.**

46. The identity of all persons known to Ford and its lawyers who may have personal knowledge of facts relevant to this case and a description of the knowledge known to each such person, whether or not Ford intends to call such person as a witness at trial and the identity of all documents concerning same.

47. All information concerning Robert C. Fish and any individual Ford identifies in response to Area of Inquiry No. 46 and the identity of all documents concerning same.

48. The specific factual basis of each Swigert, third-party and/or cross-claims raised by you in this matter, and the identity of all documents, including transcripts and other documents, that you claim support each such defense.

49. The specific factual basis for any defenses or claims you have asserted or intend to assert in this case, and the identity of all documents, including transcripts and other documents, that you claim support each such fact, defense or claim.

50. The factual basis for each of your answers to interrogatories served in this case and the identity of all documents concerning same.

**Areas of inquiry Nos. 46-50** are overbroad in that they fail to identify the information being sought with reasonable particularity, which is required pursuant to Rule 30(b)(6). The AOI as written apparently seek the basis of everything stated in Ford's initial disclosures, answer to the complaint, affirmative defenses, its investigation to date, and all discovery responses and answers. This does not provide reasonable guidance on what is actually being sought and leaves Ford guessing on how to properly prepare a witness for these AOI. This is not allowed under Rule 30(b)(6). "[T]o allow the Rule to effectively function, the requesting party must take care to designate with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Updike v. Clackamas Cnty*., 2016 U.S. LEXIS 2783, 2016 WL 111424 (D. Or. 2016).

In addition, the AOI relating to Ford's contentions in this case, the factual basis for Ford's defenses, factual positions or claims are improper. *See Outside the Box Innovations, LLC v. Travel Caddy, Inc.,* 2007 WL 5155945 (N.D. Ga. March 27, 2007) (concluding that testimony regarding the factual basis for claims and defenses asserted is not properly within the scope of a 30(b)(6) deposition).

Irrespective of this, such a request can more narrowly be answered through an interrogatory response. *See Hall*, 2005 U.S. Dist. LEXIS 34940 *22; *Wilson v. Lakner*, 228 F.R.D. 524, 529 n.8 (D. Md. 2005) (the contentions, i.e. theories and legal positions, of an organizational party may be more suitably explored by way of interrogatories and the Court may properly order . . . that contentions only be inquired into in this fashion."); *BB & T Corp. v. United States*, 233 F.R.D. 447, 448 (M.D.N.C. 2006) ("The information BB & T seeks from the depositions is for the United States to identify the factual and legal bases for its denial of the 1997 tax deductions. As stated earlier, this type of request is usually made by serving contention interrogatories which are favored over contention depositions because, by their nature, contention discovery will usually require the assistance of a party's attorney."); *Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 255, 256 (M.D.N.C. 2010) (granting defendants' motion for protective order barring plaintiffs' 30(b)(6) depositions as to topics seeking testimony regarding the basis for all of defendants' defenses and counterclaims")

These AOI also infringe upon attorney client privilege and attorney work product privilege. Specifically, these AOI directly seek (a) opinion work product, such as the results of Ford's investigation of the case and is the fundamental equivalent of a notice to depose Ford's counsel, (b) that the process of preparation of any designee who was not counsel would inevitably result in intrusion into attorney opinion work product, and (c) that the deposition as to these AOI are unwarranted given the availability of other forms of discovery to elicit factual evidence in the case. Fourth Circuit courts have stressed that Rule 26(b)(3) provides protection for materials created in preparation for litigation and especially for attorney work product, including in the context of 30(b)(6) deposition notices. *See, e.g., E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, No. CIV.A. WMN-08-CV-984, 2010 WL 2572809, at *5 (D. Md. June 22, 2010) (granting protective order when "the 30(b)(6) deposition notice on their face seek attorney work product"); *S.E.C. v. SBM Inv. Certificates, Inc.*, No. CIV A DKC 2006-0866, 2007 WL 609888, at *23-24 (D. Md. Feb. 23, 2007) (granting SEC's motion to quash 30(b)(6) deposition when "the areas of inquiry would effectively result in the deposition of opposing counsel and where other means of obtaining the discovery were available because such a deposition would likely invade attorney opinion work product and be an undue burden on the parties and the court."). Ford has disclosed (and continues to supplement on a rolling basis) the identities of those individuals and witnesses with relevant knowledge, and has identified the substance of their knowledge in response to discovery. Plaintiffs' AOI are not asking for clarification of this factual data, but rather for how Ford's counsel has marshalled the facts learned during its investigation in support of its case. All of the AOI are likely to require testimony of Ford's counsel or a proxy prepared by counsel. Thus, an invasion of attorney work product would be inevitable. Plaintiffs' clearly have other means of discovery available to procure much of the information they seek.

**Motion Denied.**
**If Defendant Ford is claiming any privilege, it must do so in accordance with Fed. R. Civ. P. 26(b) and the Local Rules.**

53. The total amount of compensation paid by Ford or on its behalf to any expert witness whom Ford may call at trial in this matter from the time Ford first hired such witness. With respect to expert witnesses who are employed by other companies, such as Exponent, ChemRisk,

CardnoChemRisk, et. seq., this request includes the total amount of compensation paid to that firm by Ford or on its behalf, whether or not for the services of the particular expert witness it is calling in this case and the identity of all documents concerning same.

**Area of Inquiry No. 53** seeks information that is not discoverable pursuant to Rule 26(b)(4) and seeks information protected by the attorney-client privilege, work product doctrine, and consulting expert privileges. Moreover, such a request can more narrowly be answered through an interrogatory response or at the expert deposition once. *See Hall*, 2005 U.S. Dist. LEXIS 34940 *22.

**Motion Granted in Part and Denied in Part. Defendant Ford must identify any expert witness Ford will present at trial and provide compensation information as requested as to any trial expert witness.**

54. If Ford contests the authenticity of any of the documents on Plaintiff's Ford exhibit list, attached hereto as Exhibit C to this Schedule and for which a copy of all such documents has been sent to Ford with this Notice, any factual basis Ford contesting the authenticity of the document and documents concerning same.

**Area of Inquiry No. 54** seeks information about whether Ford contests the authenticity of any documents on Plaintiffs' Ford exhibit list. This AOI is overly broad and unduly burdensome -- there are over 900 exhibits identified. *See Young v. UPS of Am., Inc.*, 2010 U.S. Dist. LEXIS 30764. Moreover, Ford has not yet made a determination of whether it will contest the authenticity of any documents on any exhibit list. Further, Plaintiffs have not identified any particular exhibit or document at issue that they wish Ford to authenticate (other than the 900 plus). Moreover, there are less burdensome means to obtain the requested information. *Hall*, 2005 U.S. Dist. LEXIS 34940 *22; *EEOC*, 2012 U.S. Dist. LEXIS 86198 *4. For example, Plaintiffs could identify a reasonable number of specific documents that they actually intend to use at trial and serve a corresponding request for admission asking that Ford admit or deny that it is an authentic business record of Ford. Alternatively, prior to the trial of this matter, the parties could agree to meet and confer regarding exhibits and any objections regarding them, including objections as to their authenticity. Plaintiffs fail, however, to make any such reasonable limitation, and therefore, the information sought in this AOI is unduly burdensome.

**Motion Granted.**
**Plaintiffs may submit a new AOI limiting the response to relevant documents for trial.**

**Documents To Be Produced**

1. All documents that relate or pertain to, or that reflect or evidence, any of the information requested in Topics 1 – 54 above.

**Motion Granted in Part and Denied in Part, to be consistent with the Court's Rulings on this Motion for a Protective Order.**

2. Any documents used to refresh the recollection of the designated witness and/or to prepare that person to testify. This includes any and all documents or testimony that the deponent has ever reviewed from concerning the areas of inquiry listed herein, including but not limited to any indices, lists, spreadsheets or other type of document whether maintained in excel, hardcopy, electronic format or in any other format via any means.

**Motion Denied.**

**Conclusion**

I find that in general, except as otherwise stated in this Memorandum Opinion, Ford has met its burden to show that the AOI are overly broad and unduly burdensome and not proportional to the allegations in Plaintiffs' claims and the evidence presented by Plaintiffs. The information sought is unlimited in scope and would certainly be incredibly time consuming and expensive to produce. The burden is not outweighed by the potential benefit of disclosure. Even if Ford provided all of the discovery sought by Plaintiffs, Plaintiffs claims are speculative in nature and the disclosure would not be relevant to the proof needed to further support Plaintiffs' prosecution of this civil action against Ford. Where indicated, the Court has invited Plaintiffs to submit new AOI consistent with this Court's Memorandum Opinion.

For the reasons stated above, Defendant Ford's Motion for a Protective Order (ECF 423) is Hereby Granted in Part and Denied in Part consistent with this Memorandum Opinion. Plaintiffs' Motion for Leave to File a Sur-reply (ECF 474) is Denied.

21 February 2017
Date

A. David Copperthite
United States Magistrate Judge